**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| LORI MCCUE, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | CLASS ACTION |
| | DEMAND FOR JURY TRIAL |
| *v.* | |
| A1 EXCURSIONS LLC, a Florida limited liability company, and TOP TIER TRAVELS LLC, a Florida limited liability company, | |
| *Defendants.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lori McCue ("Plaintiff" or "McCue") brings this Class Action Complaint and Demand for Jury Trial against Defendant A1 Excursions LLC, ("Defendant" or "A1 Excursions") and Defendant Top Tier Travels LLC, ("Defendant" or "Top Tier Travels") to stop the Defendants from violating the Telephone Consumer Protection Act and the Florida Telephone Solicitation Act by directing the making of telemarketing calls to consumers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Lori McCue is a resident of Phoenix, Arizona.

2. Defendant A1 Excursions LLC is a Florida limited liability company with its principal place of business in Pompano Beach, Florida. Defendant A1 Excursions conducts business throughout this District, Florida, and the U.S.

3.     Defendant Top Tier Travels LLC is a Florida limited liability company with its principal place of business in Pompano Beach, Florida. Defendant Top Tier Travels conducts business throughout this District, Florida, and the U.S.

## JURISDICTION AND VENUE

4.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.     This Court has personal jurisdiction over the Defendants venue is proper under 28 U.S.C. § 1391(b) because the Defendants reside in this District and conduct business in and from this District.

## INTRODUCTION

6.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.     When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

8.     By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13.     According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in March 2022 alone, at a rate of 140.8 million calls per day. www.robocallindex.com (last visited May 1, 2022).

14.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17.     Defendant A1 Excursions is a Florida limited liability company which sells various travel packages to consumers throughout the U.S. via telemarketing.[3]

18.     Defendant Top Tier Travels is also a Florida limited liability company which sells similar, or the same, travel packages to consumers throughout the U.S. via telemarketing.[4]

19.     Defendants use the same dialer to send outbound telephonic sales calls, including text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the "no solicitation list", soliciting consumers to purchase Defendants' travel packages.

20.     Defendants also made or caused to be made unsolicited telephonic sales calls to residential, mobile, and/or telephonic paging device telephone numbers, including the Plaintiff's mobile, without identifying the first or last names of the telephone solicitor, and without correctly identifying the business on whose behalf the solicitation was made.

21.     Defendants operate together in placing these cold calls to the consumers, working from a common office, sharing the same dialer and leads to place outbound telemarketing cold calls to the consumers, including Plaintiff McCue:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://a1excursions.com/
[4] https://www.facebook.com/TopTierTrave and https://vacationcheapdeals.com/



**Milton Jose** is with **Michaelj Blake** and **8 others**.
December 29, 2021 · ⊙

$11,040 in one day!!!! This is combined revenue for two offices under one roof in the same dialer today!!!Everyone has there own journey and sometimes we can't choose what that looks like, but what we can decide is the people we decided to bring with us! Don't miss out, join our team! Big things to come for 2022!!! #toptier #A1   5

**Milton Jose** is with **Rhianna Cornett** and **16 others**.
February 28 at 7:56 PM · ⊙

Ripleys believe it or not!! Since last time I threw up a post some one said that this was fake news I just wanted to clarify for everyone!! Start the week off right! Top Tier Travel and A1 Excursions coming in hot this week!!!   6



Milton Jose
17 November 2020 · ⊙
Fastest growing company in south Florida! Come join us and ask around Numbers don't lie
💯 Peter Joseph Anthony LaBella Mike Battista Adam Sebastian   7

- Defendants hire employees to place cold calls to consumers to solicit business for the Defendants.[8]

---

[5] https://www.facebook.com/profile.php?id=100041209491883

[6] *Id.*

[7] *Id.*

[8] *Id.*

22.     Multiple consumers have posted complaints online about receiving unwanted solicitation calls from the Defendants similar to those received by Plaintiff McCue, including:



9 https://www.nomorobo.com/lookup/201-605-9630
10 https://www.yelp.com/not_recommended_reviews/a1-excursions-pompano-beach
11 *Id.*
12 https://www.yelp.com/biz/a1-excursions-pompano-beach



**Georgia S.**
Tustin, CA
📷 114  ⭐ 34  🖼 67

⭐☆☆☆☆  3/22/2022



I keep getting calls from this place I've never dealt with them ever. Tell him to quit calling block the number and then get another call on a different number ... the next day. Now that I have the information I will report them

13

• 



**Jessica J.**
Plainville, CT
📷 25  ⭐ 42

⭐☆☆☆☆  2/15/2022



Very aggressive tactics. The representative called and told me that I had purchased a package in 2017. Which I don't remember doing.  The representative asked me to get a paper and pen to write down the information she was about to provide me.i told her that i was driving and unable to write anything down.. i told her to give me a call back in 30 min. But instead she continued with her script. The representative proceeds to tell me that in order to keep the package active I must pay $700. I told them to send me the information through email because I was currently driving on the highway (using my hands free connection). The representative told me that payment must be processed before the call is ended in order to remain active. I again repeated the fact that I was driving. I was then transferred to a supervisor. The supervisor proceeds to do the whole speech over. Then at the end asks me what is holding me back from purchasing the package.  again I stated the I was driving and I would like to have the information emailed to me before making a decision. The supervisor immediately sounded annoyed and said that after payment is proceed I would be transferred to the legal department and they can go over everything with me. And if I was really interested, I should pullover to give her my payment. At this point I got really irate and told her that they seems like a scam because no written paperwork is provided and they expected a 700 payment right away. If this was a legitimate company I still would not use there services for the simple fact I kept telling the supervisor and representative that I was driving and unable to provide any information or write things down.

14

• 

---

13 *Id.*
14 *Id.*

7



**Nicky H.**
Ozark, MO
📷 0   ⭐ 1

⭐☆☆☆☆   2/10/2022

This call center will not stop with the spam calls. They use a local area code so you will answer. They hang up if you mention removing yourself from a call list.
If you're not busy, however, it's fun to keep them on the line to listen to all the great vacations. I lie, make them feel like I'm really biting on their line. I figure as long as I keep them on the line, I'm keeping them from preying upon some unfortunate elderly person. If you really get em involved in the conversation, try sell them something back. Tell em your kid is selling chocolate bars to raise money for breast implants.                                                                        15



**Rebecca B.**
San Francisco, CA
📷 0   ⭐ 1

⭐☆☆☆☆   2/7/2022

SCAM.  They call to let you know you purchased a package with A1 Excursion in 2018/2017...past year and extending it but need credit card info.  SCAM. Hang Up and Block.                                  16



**Trista W.**  `Elite 2022`
CA, CA
📷 5   ⭐ 278   🖼 236

⭐☆☆☆☆   2/4/2022

***SCAM! SCAM! SCAM!***

Seriously, they call saying "You have a high amount of unused travel points." At which point I hang up, and block their number. Then a week goes by and they call again from a different VOIP (in the area code I reside, but different than my own area code on my phone).

I suspect this has something to do with my data being sold from my timeshare or my timeshare's partners. (Which is how they get people--because people think it's legit.)

DO NOT FALL FOR THIS! They'll ask for like some amount under $500 to "reserve" your travel plans up to a year in advance and "all you'll need to do is call to arrange", but then time goes by, you forget the details, you go to book and guess what? They want more money. OR you book right away and they insist it's more for "an upgrade" because the "standard package" you paid for is "booked for those dates". Listen guys, just AVOID AVOID AVOID.                                                          17

---

15 *Id.*
16 *Id.*
17 *Id.*



**Chantel O.**
Orlando, FL

⬜ 0  ⊡ 1

⭐☆☆☆☆  1/31/2022

I received a call from this company stating that I had an unused package. They requested $700 initially and then dropped the price to $349 and made promises of free flights, vacations, etc. I had a friend that worked for one of these types of call centers and you will receive your package but you will pay more after the fact and in some cases not receive it at all. I explained that I could not pay today and the 2nd rep became very rude, basically calling me a liar about losing my ID previously and my caution about giving out information without receiving any sort of email receipt, URL to review their site or confirmation on what was previously purchased. Run away as others have stated. If it's too good to be true, it probably is.

18



**Joanne D.**
Chesterton, IN

⬜ 250  ⊡ 56  🖼 3

⭐☆☆☆☆  9/16/2020

ⓘ First to Review

Weirdly aggressive scam. A1 Excursions has been calling me and telling me that I purchased a vacation package in 2018 and they want me to pay them $700 in booking fees so I can access the package. When I said I didn't think that info was correct, I was put on the phone with Adam. Adam was very aggressive on the phone and kept raising his voice, interrupting me, and repeating he's been, "doing this for ten years" and "the computer doesn't lie" over and over. I wanted to ask him which credit card number I had used but he kept talking over me. It was like getting a sales call from Dane Cook.
I used to work in a call center in college so I always try to be extra nice to phone salespeople. But I had to hang up on Adam so I could ask a nicer associate to tell me what credit card I had used for the purchase.
It turns out they didn't have my CC info and I had never made the purchase. It was a $500 credit on my account from calling into a radio station.
But THEN things got weirder. I heard people in the office talking about how I had called back for information and then Adam got on the phone and started yelling at me, I guess to impress the other call center people? I hung up. HE KEPT CALLING! He called me 3 times before I blocked the number! Woof. It's creepy knowing people like this have access to your personal information. Needless to say, I would not get on these guys' radar and would definitely not purchase anything from them.

19

23.     In response to these calls, Plaintiff McCue brings forward this case seeking injunctive relief requiring the Defendants to cease violating the Florida Telephone Solicitation Act

---

[18] *Id.*
[19] *Id.*

and the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF MCCUE'S ALLEGATIONS

24.     Plaintiff McCue is the subscriber and the sole user of the cell phone number ending with xxx-xxx-9180. She uses this phone number for residential purposes.

25.     Plaintiff McCue registered her cell phone number on the National Do Not Call Registry on January 11, 2008.

26.     In December 2021, Plaintiff McCue started receiving telephonic sales calls from Defendants regarding travel packages using different phone numbers which were not capable of receiving calls.

27.     Plaintiff answered many of these calls, and spoke to Defendants' employees who identified the company names as Defendant Top Tier Travels, or Defendant A1 Excursions at different occasions. The callers informed the Plaintiff that she had a large amount of travel credits with the company, and that she had just one chance to cash it in, by making a payment of $399 on the call, for a travel package including 6 vacations and 2 airline tickets.

28.     Plaintiff has never made any inquiries or purchases from either of the Defendants and was not interested in purchasing their travel credits or travel packages. Plaintiff informed the Defendants employees on multiple occasions to stop calling her phone number, but in response to her Stop requests, the callers were often rude in response, either hung up the call, and some callers even told her that they'll call her the next day.

29.     Plaintiff McCue received multiple calls from the Defendants, using spoofed phone numbers, including the following:

- On December 29, 2021, at 3:09 PM from 602-610-9741,

- On January 3, 2022, at 11:06 AM from 602-838-1828,

- On January 4, 2022, at 11:02 AM from 602-742-4188,

- On January 6, 2022, at 9:46 AM from 602-838-8370,

- On January 10, 2022, at 1:39 PM from 302-281-1032,

- On January 13, 2022, at 1:01 PM from 602-838-8742,

- On January 14, 2022, at 10:02 AM from 602-342-7047,

-  On January 18, 2022, at 11:00 AM from 602-343-2910,

- On January 19, 2022, at 10:34 AM from 602-538-2095,

- On January 20, 2022, at 9:05 AM from 602-838-8174,

- On January 21, 2022, at 2:37 PM from 602-707-3518,

- On January 21, 2022, at 5:20 PM from 602-944-4353,

- On January 24, 2022, at 3:54 PM from 602-539-1089,

- On January 25, 2022, at 8:39 AM from 602-452-6511,

- On January 27, 2022, at 11:51 AM from 336-764-1155,

- On January 29, 2022, at 8:48 AM and at 10:54 AM from 602-369-7961,

- On January 29, 2022, at 12:20 PM from 480-674-9422,

- On January 29, 2022, at 4:57 PM from 602-810-8409,

- On January 30, 2022, at 8:43 AM from 602-826-0089,

- On January 30, 2022, at 9:08 AM from 623-986-2469,

- On January 31, 2022, at 11:35 AM from 602-836-3416,

- On February 2, 2022, at 10:00 AM from 602-381-7681,

- On February 4, 2022, at 1:49 PM from 602-628-8641,

- On February 7, 2022, at 9:55 AM from 636-256-2452,

- On February 7, 2022, at 11:18 AM from 602-836-3706,

- On February 9, 2022, at 11:07 AM from 424-339-1848,

- On February 10, 2022, at 3:19 PM from 602-654-4334,

- On February 11, 2022, at 9:15 AM from 602-978-8853,

- On February 16, 2022, at 11:42 AM from 602-531-10149,

- On February 17, 2022, at 9:12 AM and at 12:46 PM from 602-887-3424,

- On February 17, 2022, at 4:08 PM from 480-806-1976,

- On February 24, 2022, at 11:49 AM from 954-833-2571, and from 602-887-8438,

- On February 24, 2022, at 2:52 PM from 602-887-0944,

- On February 25, 2022, at 2:22 PM and at 3:44 PM from 954-820-6908,

- On February 26, 2022, at 2:22 PM from 480-847-4460,

- On March 4, 2022, at 9:15 AM from 602-887-7546,

- On March 4, 2022, at 5:30 PM from 602-379-1100,

- On March 14, 2022, at 12:27 PM from 602-848-8703,

- On March 14, 2022, at 12:29 PM and at 12:37 PM from 602-848-8579,

- On March 14, 2022, at 12:35 PM from 954-591-2092,

- On March 21, 2022, at 12:42 PM from 602-960-0648, and

- On March 24, 2022, at 8:31 AM from 602-922-0514.

30.    On March 14, 2022, at 12:29 PM, Plaintiff received a call from the Defendant using the phone number 602-848-8579. Plaintiff answered the calls and while she was talking to Defendant Top Tier Travel's employee, she received a text message to her cell phone from the phone number 954-591-2092. The text message was soliciting travel packages to the Plaintiff. The text message identified the company as Defendant Top Tier Travel and provided a call back

number for Ken Anderson, 954-419-8886. It also provided Defendant Top Tier Travel's website: "vacationcheapdeals.com".



31.     The website "vacationcheapdeals.com" is owned and operated by Defendant Top Tier Travels.



32.     Plaintiff then again received the same solicitation text message as before from Defendant Top Tier Travel, using the same phone number 954-591-2092, and it provided the same call back number as before along with Defendant Top Tier Travel's website, vacationcheapdeals.com:



33.     Plaintiff continued to receive solicitation text messages from the Defendant despite having her cell phone number registered on the National Do Not Call Registry, and despite trying to instruct Defendants' employees to stop calling her phone number on multiple occasions.

34.     On many of these calls made to the Plaintiff by or on behalf of Defendant A1 Excursions and/or Defendant Top Tier Travels, the callers failed to identify their full names along with the name of the business on whose behalf the solicitation call was made when the call was answered by the Plaintiff.

35.     Most of the phone numbers from which Plaintiff McCue was called are not capable of receiving calls, and the Plaintiff was unable to reach the Defendants on calling those phone

14

numbers back. Defendants used spoofed numbers to place solicitation cold calls to Plaintiff McCue's cell phone.

36.     The unauthorized telephonic sales text messages that Plaintiff received from Defendant, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

37.     Seeking redress for these injuries, Plaintiff McCue, on behalf of herself and Classes of similarly situated individuals, bring suit under the FTSA.

## CLASS ALLEGATIONS

38.     Plaintiff McCue brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) either Defendant (or an agent acting on behalf of a Defendant) texted and/or called more than one time, (2) within any 12-month period, (3) where the person's cell phone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted/called the Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) either Defendant (or an agent acting on behalf of a Defendant) called more than one time, (2) within any 12-month period, (3) for substantially the same reason Defendants called Plaintiff, including (4) at least one call after they requested that Defendant stop calling.

**Autodial Class:** All persons in the United States, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendants' goods and/or services, (2) using the same equipment or type of equipment utilized to call the Plaintiff.

**Unidentified Telephone Solicitor Class:** All persons in the United States, who, on or after July 1, 2021, (1) received an unsolicited telephonic sales call from either of the Defendants, (2) in which they failed to identify the full name of solicitor and the business on whose behalf the solicitation call was placed, as in the solicitation received by the Plaintiff.

**Spoofed Phone Number Class:** All persons in the United States, who (1) received a telephonic sales call from or on behalf of either of the Defendants, (2) using a phone

number which the recipients of the call were unable to call back, or (3) on calling those number back, the recipients were unable to reach the Defendant or their agents, as in the Plaintiff's case.

39.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either of the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff McCue anticipates the need to amend the Class definitions following appropriate discovery.

40.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

41.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether either of the Defendants systematically sent, or caused to be sent, multiple calls and/or text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent;

(b)     whether the calls and text messages to Plaintiff and other consumers were sent for telemarketing purposes;

(c)     whether the Defendants use spoofed numbers to call the Plaintiff and other class members;

(d)     whether the Defendants employees failed to identify their full names and/or the name of the business on whose behalf they were calling on the calls Defendants placed to the Plaintiff and other class members;

(e)     Whether Defendants' conduct violated the TCPA and the FTSA; and

(f)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

42.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to the Plaintiff. The Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

43.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff McCue. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants'

actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff McCue and the Do Not Call Registry Class)**

44.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

47.    Defendants violated 47 C.F.R. § 64.1200(c) by causing to be initiated telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48.    Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call and/or text message in a 12-month period

made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

49.     As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in statutory damages for such violations of 47 C.F.R. § 64.1200.

50.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff McCue and the Internal Do Not Call Registry Class)**

51.     Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference herein.

52.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities

making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

53.    Defendants placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendants to initiate telemarketing calls.

54.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

55.     The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**THIRD CLAIM FOR RELIEF**
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff McCue and the Autodial Class)**

56.     Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference herein.

57.     Plaintiff brings this claim individually and on behalf of the Autodial Class Members against the Defendants.

58.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

59.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

60.     Defendants failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

61.     In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

62.     Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

63.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**FOURTH CLAIM FOR RELIEF**
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff McCue and the Unidentified Telephone Solicitor Class)**

64.     Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference herein.

65.     Plaintiff brings this claim individually and on behalf of the Unidentified Telephone Solicitor Class Members against the Defendants.

66.     The FTSA requires "any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number" to mandatorily "identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2)

67.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

68.     In violation of the FTSA, Defendants failed to identify the name of the telephone solicitor or the business on whose behalf those unsolicited telephonic sales calls were made and/or caused to be made to the Plaintiff, and other members of the Unidentified Telephone Solicitor Class.

69.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

### FIFTH CLAIM FOR RELIEF
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff McCue and the Spoofed Phone Number Class)**

70.     Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference herein.

71.     Plaintiff brings this claim individually and on behalf of the Spoofed Phone Number Class Members against the Defendants.

72.     It is a violation of the FTSA "for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is

capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone." Fla. Stat. § 501.059(8)(b).

73.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

74.     Defendants failed to ensure that the phone number which was displayed in the caller identification service for the telephonic sales call made by them to the Plaintiff was capable of receiving phone calls if the Plaintiff tried to call it back. The Plaintiff was unable to connect with the Defendants upon calling the phone number which was displayed on their cell phone's caller identification system for the telephonic sales call received from the Defendants.

75.     In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members using spoofed phone numbers or phone numbers which could not be called back by the Plaintiff or the other Class members.

76.     As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Classes are also entitled to an injunction against future calls. *Id.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b)   An award of damages and costs;

c)   An order declaring that Defendants' actions, as set out above, violate the TCPA and the FTSA;

d)   An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff McCue requests a jury trial.

> **LORI MCCUE**, individually and on behalf of all others similarly situated,

DATED this 11th day of May, 2022.

> By: /s/ Stefan Coleman
> Stefan Coleman (FL Bar No. 30188)
> law@stefancoleman.com
> COLEMAN PLLC
> 66 West Flagler Street, Suite 900
> Miami, FL 33130
> Telephone: (877) 333-9427
> Facsimile: (888) 498-8946
>
> Avi R. Kaufman (FL Bar No. 84382)
> kaufman@kaufmanpa.com
> KAUFMAN P.A.

25

237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*